| 80 | 65 |
|-----|-----|
| 216 | ¹248 |

# Brickway's Case.

1. The Act of April 20th 1869 (admission of certain insane into state hospitals), is not confined to those guilty of offences or dangerous or unsafe to be at large; it extends to all whose welfare or that of others requires restraint.

2. The court or judge to whom the application to place the insane person in the hospital is made, may proceed by citation or rule to show cause, to bring in the proper parties for a hearing.

3. The proceeding may be in any court.

4. A petition under the act was made to the *Common Pleas*, who appointed commissioners to inquire into the insanity of the person; they reported to the *Quarter Sessions;* an order was made by the Common Pleas to certify the case to the Quarter Sessions, and it was proceeded in to a final decree in that court. The judges being the same in both courts, the order was but formal and produced no substantial change in the proceedings.

5. The order was but an amendment in pursuance of the sound discretion of the court to produce uniformity in the proceedings.

6. A person was committed to the jail of Armstrong county for disorderly conduct; by proceedings under the Act of 1869, sects. 6 & 9, he was found insane, and committed by order of the court to a state hospital, at the expense of Armstrong county. A rule by that county on Buffalo township, to show cause why that township should not be certified as his place of settlement,

30 P. F. SMITH—5

was made absolute.  *Held*, that under the Act of 1869, the Court of Quarter Sessions had this power.

7. An appeal does not lie from the decree of the Court of Quarter Sessions in proceedings under the Act of 1869. The Supreme Court therefore cannot examine errors dependent on the evidence.

October — 1875.  Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Certiorari to the Court of Quarter Sessions of *Armstrong county* : Of October and November Term 1875, No. 191.

The proceedings in this case were instituted under an Act " To provide for the admission of certain classes of the insane into the hospitals for the insane in this Commonwealth," &c., passed April 20th 1869 ; Pamph. L. 78, 2 Br. Purd. 969.

The 6th and 9th sections are as follows :—

6. Insane persons may be placed in a hospital by order of any court or law judge, after the following course of proceedings, namely : On statement in writing of any respectable person that a certain person is insane, and that the welfare of himself or others requires his restraint, it shall be the duty of the judge to appoint immediately a commission, who shall inquire into and report upon the facts of the case. This commission shall be composed of three persons, one of whom at least shall be a physician and another a lawyer; in their inquisition they shall hear such evidence as may be offered touching the merits of the case, as well as the statements of the party complained of, or of his counsel; if in their opinion it is a suitable case for confinement, the judge shall issue his warrant for such disposition of the insane person as will secure the object of the measure.

9. If it shall be made to appear to any law judge that a certain insane person is manifestly suffering from want of proper care or treatment, he shall order such person to be placed in some hospital for the insane at the expense of those who are legally bound to maintain such insane person ; but no such order shall be made without due notice of the application therefor shall have been served upon the persons to be affected thereby and hearing had thereon.

On information made August 6th 1873, by Charles Montgomery, a man calling himself Weed or Waddle was arrested and committed to the jail of Armstrong county for disorderly conduct.

On the 5th of September 1873, James W. McKee presented a petition " To the judges of the Court of Common Pleas of Armstrong county," setting out that on the —— day of August 1873, a certain insane man, who called himself Weed or Waddle, and whose proper name was unknown, was committed by a justice of the peace of the borough of Freeport to the jail of said county, and that the welfare of said man required that he be restrained and placed under medical treatment.

On the same day the court appointed R. W. Smith, a lawyer,

[Brickway's Case.]

J. G. Cunningham, a physician, and James McCullough, " commissioners to inquire and report according to law."

On the 6th of September the commissioners reported : " To the Judges of the Court of Quarter Sessions of the Peace of Armstrong county," that from the testimony taken by them (which was annexed to the report), " and from an examination and inspection of said man, and from his own statement, we are of opinion that he is insane, and needs such restraint and treatment as are necessary for his recovery from his malady." They further reported, that it was " unsafe and dangerous for the aforesaid insane man to be at large."

Thereupon the court made the following order :—

" September 9th 1873. On examination of within report and proceedings, the same is approved, and the person named in the proceedings as insane is directed to be committed to the Western Pennsylvania Hospital, at the expense of the county of Armstrong, and a rule is directed to be issued to the poor officers of Freeport, to show cause why he should not be declared a charge upon said borough."

From evidence taken in the course of the proceedings it appeared that the name of the insane man was Joseph Brickway.

The docket entries then are as follows :—

" And now, to wit : April 28th 1874, on motion of J. V. Painter, attorney for the county commissioners of the county of Armstrong, the court order this case certified from the Common Pleas Court at No. 58, December Term 1873. And now, to wit : April 28th 1874, so far as the proceedings in this case seek to charge the borough of Freeport with maintenance of the within-named person, it is adjudged that the same be dismissed, it appearing that he had not his legal residence in said borough. March 11th 1875, on motion of J. V. Painter, attorney for the county, rule on the Overseers of the Poor of Buffalo township, Butler county, to show cause why the Quarter Sessions of Armstrong county should not certify said township as the place of settlement of said Joseph Brickway. April 28th 1874, served on the Commissioners of Butler county, and on two of the Overseers of the Poor of Buffalo township, Butler county. June 29th 1874 J. G. D. Findley, Esq., appointed commissioner. May 11th 1875, argued. June 21st 1875, rule made absolute. The Overseers of the Poor of Buffalo township, Butler county, appealed from the decision and decree."

The decree was : " The rule is made absolute, and it is hereby certified that Buffalo township, Butler county, is Joseph Brickway's place of residence, and was so at the time of his arrest and when the application was made."

The testimony taken before the commissioners to inquire as to

[Brickway's Case.]

the insanity, and also that taken before the commissioner under the rule on Buffalo township, was sent up with the record.

The assignments of error were :—

I. The proceedings in the Common Pleas of Armstrong finding Brickway insane, were irregular and void ; because :—

1. There was no petition in due form alleging that he was insane, and praying for the appointment of commissioners to inquire into the insanity.

2. The court had no power to appoint a commissioner to inquire into the insanity of Brickway on the petition of McKee.

3. There were no commissioners legally appointed to inquire into the insanity of Brickway.

4. The report of the commissioners was void ; it did not show that Brickway had any notice of the proceedings, or that the commissioners were sworn or legally constituted to inquire into Brickway's insanity.

5. No jury was empannelled, &c., to pass upon Brickway's insanity ; there was no commission *de lunatico inquirendo,* and no return of the inquisition lawfully made.

II. The Quarter Sessions of Armstrong had no authority to commit Brickway to the Western Pennsylvania Hospital, because :—

1. He was not legally declared to be insane.

2. Neither the record nor papers show that notice of the inquisition was given to Brickway, nor to any person for him, nor that the appellants had notice.

3. The record does not show that there was any proof tending to show that a cure of Brickway's insanity was likely to be effected by committing him to the hospital.

III. The arrest and imprisonment of Brickway were illegal, because there was no legal offence charged in the information.

IV. The arrest and imprisonment of Brickway being illegal, the Quarter Sessions had no jurisdiction, and the order committing him to the hospital was void.

V. Making the rule absolute, and certifying that Buffalo township was Brickway's residence ; because :—

1. The proof does not show that he had any legal settlement in that township.

2. No application was made to the overseers of that township for relief by Brickway or any one on his behalf.

3. No relief was granted by the overseers to Brickway.

*J. A. McCullough* and *Thompson & Scott,* for the certiorari.

*J. H. McCain* and *J. Gilpin,* contrà.

Judgment was entered in the Supreme Court November 15th 1875,

[Brickway's Case.]

PER CURIAM.—No appeal is given in this case to this court, and consequently we have before us only the record proper, not the evidence.

We can, therefore, examine only the assignments of error touching the record, and not those relating to the evidence. It is very evident from the record this proceeding was under the 6th section of the Act of 20th April 1869, a law passed to regulate the practice in the commitment of insane persons to the hospital of the state. The act materially modifies former laws on this subject. It is not confined to persons found guilty of offences, or those dangerous to themselves or to the community, or unsafe to be at large; but it extends to those whose welfare, or that of others, requires them to be restrained, or who manifestly stand in need of proper care and treatment: sects. 6th and 9th. These sections provide for the exercise of the powers conferred in the act by any court or law judge, and extend to the disposition of the person of the insane subject. In the former it is said : " The judge shall issue his warrant for such disposition of the insane person as will secure the object of the measure." The object is announced in the beginning of the section, viz. : " Insane persons may be placed in a hospital by order of any court or law judge, after the following course of proceeding, namely." Then follows the mode of proceeding on the application of " any respectable person." The 9th section provides that " if it should be made to appear to any law judge that a certain insane person is manifestly suffering from the want of proper care or treatment, he shall order such person to be placed in some hospital for the insane, at the expense of those legally bound to maintain such insane person," &c. Thus the power to commit to the hospital, and to dispose of the case so as to provide for his maintenance there, by the proper parties, legally bound therefor, is clear, and being in general terms, carries a full power to direct the manner of proceeding, not otherwise provided for in the act. The court or judge may, therefore, proceed by citation or rule to show cause to bring in the proper parties for a hearing. Now, substantially, this has been done in the case before us, though by clerical errors the proceeding appears to be confused ; yet not so much entangled that it may not be extricated by a judicious power of amendment.

Under the law the proceeding may be in any court, and therefore either in the Common Pleas or Quarter Sessions. The petition of the " respectable person," provided for in the 6th section, was directed to the Common Pleas, but the commission appointed under it, composed of a lawyer, a physician and another, directed their report to the *Court of Quarter Sessions*, and thenceforth the case proceeded therein, terminating in a commitment to the Western Pennsylvania Hospital, and finally in a rule on the Overseers of Buffalo township, Butler county, to show cause why the Quarter

Sessions should not certify that township as the place of legal settlement of the insane person.   It is evident that the judges considered themselves as acting in the Court of Quarter Sessions, and being the same judges, and having the same powers, either in the Common Pleas or Quarter Sessions, their order to certify the case as it originally began in the Common Pleas into the Quarter Sessions, was but a formality, and produced no substantial change in the proceeding itself.   It was done at the instance of the proper party, and was, therefore, but an amendment, made in pursuance of their sound discretion to produce uniformity in the proceeding before them.   The Court of Quarter Sessions having, then, adequate power under the Act of 1869, to make a disposition of the case to secure the welfare of the insane person, and his proper treatment in a hospital, and to order the expense to be borne by those legally bound for his maintenance, no substantial error was committed.   The law makes no provision as to the mode of proceedings by the commission or before it.   We are bound to presume, therefore, that the court was satisfied when acting upon their report that everything essential had been properly done. Mere informalities and harmless errors must be disregarded.

Proceedings affirmed.